and our next case is Timothy Allen Davis, Sr. v. City of Apopka, Robert Manley III. We have Mr. Green and Ms. Bradford. Mr. Green, if you are ready to proceed, please begin. Yes, Your Honor. I'm James K. Green, West Palm Beach, on behalf of Mr. Davis, who's the appellate in this case. This appeal involves a painful and tragic death. Mr. Davis, a retired police lieutenant, shot his son, Timmy, after an emotional child custody handoff. Mr. Davis, excuse me, Timmy recently returned to the home after leaving college where he had played football. He weighed 280 pounds, stood 6 feet 1 inches tall, and was the father of a young child. This was, as I said, an extremely angry and emotional child custody handoff. Ms. Davis handed the child over to its mother. Timmy went after the mother. Mr. Davis intervened. Mr. and Mrs. Davis then tell Timmy to move out. Timmy then brutally attacked Mr. Davis by head butting, football tackling, and slamming Mr. Davis to the tile floor. The injuries are specified in great detail in the Third Amendment complaint. Visibly bruised and swollen around his eyes, jaws, and lips, Mr. Davis instructed his wife to call the paramedics for his severely injured face and knees. He tried to distance himself from Timmy, and then Mr. Davis went downstairs to wait for the paramedics. Timmy followed Mr. Davis down. Mr. Davis walked to the garage to try to get away from Timmy. Timmy continued to follow him and was still enraged, hoping that the mere sight of a firearm would scare Timmy from attacking him again. Mr. Davis retrieved his firearm from his car. Then, from less than 10 yards away, Mr. Davis observed Timmy pace back and forth. Mr. Green, if I may, I think we've read your briefs and we're familiar with the facts. I will say, for my part, it's an awful scenario no matter which way you slice it, but I think we're trying to figure out what the answer is on how Stand Your Ground impacts, or whether Stand Your Ground impacts the probable cause analysis. Given that actual probable cause is a look at what the officers knew at the time, isn't it possible that the injuries to Mr. Davis, to your client, were the result of his son's self-defense rather than, frankly, the facts as it appears that they happened? Couldn't the officers have fairly said that was the case? Not here, because Mr. Davis specifically said that he fired the shot because Timmy was beating him up and kept attacking him. But wouldn't a reasonably self-preservationist person, even if the facts were reversed, wouldn't that person falsely claim that they had done the shooting in self-defense? I think we've got cases that say that defendants make self-defense statements all the time. Well, you kind of look at the Martelli case, which is, I think, the most recent example in the 11th Circuit. In that case, the police officer was kind of given contradictory signals about whether there was, in fact, self-defense. He then spent two weeks interviewing various witnesses, including the criminal defendant in that case, Ms. Martelli. He took his time. In this case, there was nothing to prevent the officer from conducting a minimal investigation into self-defense. Mrs. Davis was there. Mrs. Davis was the one who called 911. Mrs. Davis did not witness the actual shooting, nor did the neighbors, as I read the record. Mrs. Davis heard the angry words from Timmy. Mrs. Davis saw the injuries that Mr. Davis had suffered. That doesn't constitute, counsel, that doesn't constitute proof of self-defense. No one saw the actual shooting except the plaintiff and the deceased. Isn't that correct? Yes, Your Honor. However, there was considerable other evidence that Timmy was attacking Mr. Davis. Timmy was a very large and powerful recent college football player. Mrs. Davis heard Timmy say that he was sorry for attacking his father. Mrs. Davis, when she made the 911 call, didn't say anything about her husband acting in self-defense, did she? She was calling to get someone there to take care of her husband. I'm not offering any criticism. I'm just looking at what the officers were aware of at the time of the event. That is correct. However, the officers could have taken it five or ten minutes to talk Mrs. Davis about what she saw, what she heard, and the fact that Timmy had essentially apologized for attacking his father. Also at the scene, Timmy essentially told the officers he was still alive, still conscious. He could have been asked questions. He was verbal. He said, don't do anything to my daddy, which is consistent. Mr. Green, does this turn on the fact that the officers never asked him what had happened? He was, in fact, an eyewitness to what happened, so there is the possibility that Timmy could have said, I did this, I attacked my father, or he could have said, my father attacked me, and nobody asked Timmy. Nobody asked Timmy, and that would have been a basic investigative technique, just to ask the other eyewitness. So if Timmy says, if the officers ask Timmy, and Timmy says, my father was the aggressor, would you agree that Mr. Davis could have been arrested at that point? Possibly, however, there were other witnesses that that could have been interviewed, including... An officer at the scene is not required to sort through, they're required to conduct a reasonable investigation, and not required to sort through what the Kansas Supreme Court case is, I think, fairly constructive, that state against Hardy, which was decided the same year as the Kumar case, where the court said, without probable cause to believe that the unlawful force was used, arrest and prosecution is prohibited. If immunity were the same as self-defense, there would have been no need to adopt a specific immunity statute. That's the state law, dealing here, well, at least in part, we're dealing here with a violation of the Fourth Amendment. Yes, your honor. The Fourth Amendment speaks nothing about immunity, the procedural vehicle of Section 1983, because the state says, this is our procedure for immunity. If you arrest somebody, we need to have it adjudicated by the court as soon as possible time. That doesn't mean the officers on the scene under the Fourth Amendment have to make an immunity determination. Well, however, because this is a substantive right, and because state law essentially determines what constitutes the substantive offense, the standard ground law has effectively changed to require not only that you have, in this sense, in this case, a homicide, a shooter, but it also requires that there be some investigation into whether the force used was... Well, let me ask you this. Suppose the state law said probable cause is not enough. You've got to have clear and convincing evidence that a crime has been committed. Would that violate the Fourth Amendment for the officers to arrest somebody based on probable cause alone? Not necessarily, and again... No, no, no, no, no, take the necessarily out. Would it violate the Fourth Amendment or not? Standing alone, no. Okay, then the state can't add to the probable cause requirement for purposes of determining whether there's a violation of the Fourth Amendment. The state can define the elements of the crime, and we've got... That's right, but the state didn't define an element of the crime, as I understand it, as failure to recognize, I mean, as not standing your ground. Okay, the state defined, and it said the elements are, and I'm going to oversimplify this, A, a homicide, B, a shooter, and C, you've got to establish that the force used was unlawful. And then the Florida Supreme Court, who is the ultimate arbiter of state law, said you've got to determine that in the judicial process. There's no way officers can determine that on the scene. Isn't that what the Supreme Court of Florida said? Well, in Kumar, there was some language to that effect, but that Kumar was... It's not just language to that effect. That's what they said. It's very specific declarative sentences. Well, it's a declarative sentence, but it's dicta to the overall decision. But anything that a state Supreme Court says is the state law, we've got to give a great deal of deference to, even if it is dicta. And Kumar, the court said, in most potential self-defense cases, didn't say in all potential Supreme Court cases, but Kumar discussed whether there should be a pre-arrest judicial hearing to determine whether the person is protected by standing ground. We're not asking that. All we're asking is that there be a minimal investigation with readily accessible witnesses, such as were present on the scene at this case. Tim, Mr. Davis? I'm sorry. I know you're running out of time, but I want to ask you this one more question. Setting aside standard ground, do you think that the Fourth Amendment probable cause analysis standing alone requires a particular level of investigation? Yes. I think it goes beyond just saying, I've got proof of a homicide and I've got proof of a shooter. I think there, under the facts, the detailed facts of this case, the district court should not have dismissed this case. Whether you look at the standard ground immunity as a further element of the offense of homicide or first degree murder, or just in terms of given the evidence that was readily available to these officers. Yes, we do. Thank you, Mr. Green. And you have reserved five minutes for rebuttal. Ms. Bradford, you may begin. Thank you, Your Honor. Good morning, members of the panel and counsel. May it please the court, Gail Bradford, on behalf of Appellant City of Apopka, we come before the court to ask that the district court's rulings with regard to two matters. There are two issues before the court. We've talked a little bit about the standard ground and probable cause, which, as I see it, is sort of the meteor of the two issues. And there's also an issue with regard to policy, custom practice, and whether that should have been submitted to the jury. With regard to standard ground, the plaintiff would have a additional investigative burden placed on police officers who are coming to the scene to investigate a crime. In this particular instance... Did they investigate the crime? I can't understand why in the world they didn't ask Timmy what happened. Your Honor, I don't have a good answer to that because I wasn't on the scene. However, I would guess, and this would be just my guess, that getting him medical care was probably more appropriate than engaging in an interview process. And as part of the investigative process, officers are not required to go down every possible defense and every possible rabbit hole. What are officers required to do? When they arrived on the scene, Mr. Davis admitted that he had shot his son in self-defense, and we know that Timmy is awake and talking and telling the officers to leave his daddy alone. So they arrested Mr. Davis after he gunshot victim who is talking to officers. A self-defense claim has been raised. Officers are required to conduct a reasonable investigation and they cannot turn a blind eye to exculpatory information available to them. Why isn't the officer's failure to ask Timmy fatal in a motion to dismiss phase of this litigation? Because of all of the other factors that contributed to cause when the officers got there. The officers arrive, they see Mr. Davis on top of Timmy. The 911 call from Mrs. Davis said, my husband has shot someone. Mr. Davis admitted that he had shot somebody, but he said my son was the aggressor. And you and his, and he's told you it's in self-defense. I, I guess I still don't see why when he has said my son was the aggressor, this was in self-defense and the son is awake. If he was unconscious, that's different, but the son is awake and talking. Yes, your honor. And, and my response to that would be in light of everything else that the officers found when they got there, including Mr. Davis's admission, including his possession of the firearm, uh, that the facts reasonably known to the officers did not conclusively establish that, uh, uh, stand your ground, uh, defense responsibility to investigate once they got there. They do have a responsibility to conduct a reasonable investigation. They do not have a responsibility to conduct a mini trial or a hearing, uh, with regard to the, the, the stand your ground defense. Let me ask you this. If the officers had asked Timmy, what happened? And Timmy said, I was attacking my father and shot me in self-defense. Could they have arrested Mr. Davis? I believe that if there was sufficient evidence to create probable cause, which is what the stand your ground statute requires, uh, an arrest would have been lawful. We're talking about the specific facts of this case. You have this situation and you add into it. They asked Timmy what happened? And he says, I am so sorry. I attacked my father. I was going to kill him and he shot me in self-defense. Do they have probable cause to arrest Mr. Davis? Your honor, based on those limited facts, not, not limited facts, the case as it exists, and I'm adding one, okay. Based, based on what you've presented, the adding one, um, I would think that further investigation would be warranted. The question then becomes let, let's, let's, let's say there is no probable cause. Let's say the, the, the actions are lawful. Therefore the stand your ground statute, which really incorporates probable cause can arrest somebody. If we deter, we police officers determine that the actions are lawful because the stand your ground just incorporates the probable cause standard. The question then becomes, why are we talking about a constitutional violation? If state law has been violated? No, I'm asking under my added fact, do you have, did the officers have probable cause to arrest Mr. Davis? Your honor, I think, yes. I still think that even if Timmy had said I was attacking my father and he shot me, I think that there is a basis for probable cause to process. The criminal justice process, those vehicle, that vehicle is available to him post arrest. I don't know if you're hearing that judge branch is not asking about stand your ground. She's asking about probable cause under the fourth amendment. And would you have it under the scenario that she outlined? Well, he's got a firearm. We have admission by both parties that there has been a shooting. So certainly there is probable cause that some for the officers on scene, that some crime has occurred. Under my scenario, you've got two people who've said the shooting was in self-defense and there's based on the facts as we know it, there's nothing now that I still believe there needs to be an analysis of imminent harm. For example, and I don't mean to take a left turn on your honor. I really don't. But if we look, for example, at the Martinelli case that came down in May, that the court, I'm sorry, the police officer investigated and based on the facts where, where the, the criminal suspect had sufficient time to go back to her bedroom, get her firearm, come back out and shoot. Nobody was disputing that, that, that she had shot the gentleman. I think there are other issues that, that may give cause to, that may give rise to probable cause under your scenario with, with the additional fact. What about, what about this city's alleged failure to follow its domestic violence protocols? There is no constitutional right to a domestic, to, to following a domestic violence protocol. What's the interplay between the domestic violence protocol and the reasonable investigation that is required? That, I don't know if that I understand your question correctly, your honor. If the, the city ordinarily follows a particular practice in domestic violence cases, wouldn't, why wouldn't we suspect that that would be part of a reasonable investigation? Because the rest of the reasonable investigation covers those issues, your honor, that, that to the extent that there's a domestic violence protocol that should or shouldn't have been filed, maybe that was a procedural mistake on behalf of city officers, but that does not create a constitutional violation and that does not necessarily nullify probable cause that's been obtained so far. What would you say that the officers did here that constituted their reasonable investigation? Well, the officers arrived on scene, had information coming in that there was a shooting and that Mr. Davis was the shooter. They have an admission by Mr. Davis perhaps the officers came and said, what happened? Regardless, we know it's undisputed that Mr. Davis said, I shot my son. If they credit him as saying that he shot the son, why wouldn't they also credit him as saying it was in self-defense? Well, there are other factors in addition to, I shot my son. They're finding Mr. Davis on top of his son. And you know, I would guess that the person who's getting the better of the fight would be the person on top. I think that's a reasonable assumption to make for law enforcement officers arriving on scene. That's a common sense assumption. Mr. Davis has made that admission. And certainly he also said in self-defense, there were no other witnesses. The neighbors heard the motion and came out, but there's nothing in other. Except Timmy, as we discussed. Yes. Yes, ma'am. Yes. Mr. Davis and his son. Based on what you just said in responding to my questions and Judge Grant's questions, aren't you saying that the officers in any situation where there's been a shooting or an attack and someone has admitted that they have done the shooting or the attacking, that even if there's a self-defense allegation that's completely corroborated, you're saying that doesn't matter. Probable cause exists to arrest. If somebody admits I shot, I attacked. I respectfully disagree, Your Honor. I'm not trying to say that. I'm saying under fact patterns that provide that probable cause is created. Maybe let me do the converse. Saying magic words when you are a criminal suspect doesn't completely relieve you of risk of arrest. So depending on the scenario, depending on the facts, and probable cause is very much a fact-driven, time-driven concept. So to have individuals who are potentially being arrested, we know that officers are not obligated to necessarily listen to those, let me rephrase that, believe those particular allegations because folks who are being arrested may not necessarily be truthful and it's a little self-serving to say my actions were lawful because I was defending myself if that is not the case. Ms. Bradford, and I completely acknowledge your point that the suspect would lie about self-defense. What I'm suggesting is if Timmy had said, and back to my scenario, I was the aggressor, my dad acted in self-defense, and you've said there's still probable cause to arrest, what you have suggested is that an officer, even when all the eyewitnesses say it was self-defense, including the victim, that it would narrow that down a little bit to say the two eyewitnesses to this incident are Mr. Davis and his son. We know that officers don't necessarily need to give credence to the criminal suspect's assertion. So I would suggest to this court that Mr. Davis, Mr. Davis's allegations, let me rephrase that, how the third amended complaint is phrased in terms of Mr. Davis saying in self-defense is not necessarily of greater weight. Certainly, Timmy is the second and only other eyewitness and whether or not he is available to make representations to law enforcement, we simply don't know that. And based on the third amended complaint and how the facts were pled and the district court's evaluation of that, we would ask that this court affirm the district court's orders with regard to the stand your ground and find that the stand your ground statute was properly, I guess, applied by the court in light of Florida Supreme Court's cases addressing stand your ground. I'm sorry. No, I apologize, Your Honor. We haven't had much opportunity to talk about the second issue and I just want to be sure that it doesn't get short of the custom policy argument that certainly this court reviews the district court judges orders with an abuse of discretion. The judge went through, I see I'm out of time, if I may finish my point, Your Honors. Just briefly. Absolutely. Well, it's an abuse of discretion standard. All the parties tried the two counts that were at issue or the two questions that were at issue that were set forth in the pretrial conference. And we would ask that this court affirm both points with regard to this appeal. Thank you, Mr. Bradford. Mr. Green, you have reserved five minutes for rebuttal. Thank you, Your Honor. First, I think it should be noted that the case law in effect in October of 2011 was the Dennis case and not the Kumar case. In any event, there was no effort whatsoever. We follow the case law that's in effect now, don't we? At least under Florida law, I couldn't find any case law outside the context of where officers follow the law in effect at the time of the seizure. We're not talking qualified immunity here, counsel. Yeah, I agree. There's a recent case, and I'll file supplemental authority that was decided a couple days ago by the Fourth District Court of Appeal that says that when you look at an arrest situation for probable cause, you look at law in effect at the time. But the Fourth Circuit doesn't tell us what probable cause under the Fourth Amendment is. I agree, and when I conducted the research, I couldn't find any federal Section 1983 case law or Fourth Amendment case law that specifically address that issue. All I've got is, and I know that the Fourth District Court of Appeal cannot tell you how to rule. I'm just but as I said, there was no effort to ask Timmy any questions whatsoever. As we indicated before, to determine probable cause, you've got to look at the elements of the offense. In the past, the elements of the offense were homicide and shooter. However, stand your ground added an element that the force must be determined to be unlawful. And we've since learned that it's not impossible. In fact, in many cases, it's entirely possible to conduct an investigation. Look at the Martelli case. That was a two-week investigation into standard ground immunity. Look at the Trayvon Martin case. That was at least a couple of months. Here, there was no immediate time pressure. We were dealing with a retired police lieutenant. We're dealing with a, he was at his home, and we know that he was immobilized. There was nothing to prevent them from sending him to the hospital, conducting an investigation, and then before his release from the hospital, making a determination. I'd ask that the, and while many suspects may to a pre-arrest judicial hearing on stand your ground immunity, we're claiming that stand your ground requires a reasonable investigation using standard procedures and a determination that the force used by Mr. Davis was unlawful before there can be such an arrest. Here, there was neither. I think the city argues that it's too difficult to get officers into making judicial decisions. The stand your ground immunity is no more a legal decision than decisions officers make every day when they write their probable cause affidavits. What these officers could and should have done, as I said, is indicate homicide, shooter, and then an explanation as to why they believe that the force used was not unlawful. There was, officers have been writing probable cause affidavits for at least decades, and they've used standard procedures to state probable cause for certain offenses, and they should be able to use standard procedures to determine whether the force used was lawful or unlawful. This court should, we'd ask that this court either decide that the officer's basic duties to investigate and determine in writing why there is no stand your ground immunity from arrest, or it should certify this question to the Florida Supreme Court. We respectfully submit that these issues should not have been decided on a motion. Counselor, let me ask you something before you run completely out of time. What exactly is the last operative complaint about what Timmy would have said had they asked him who was the aggressor? Well, the last operative complaint is the third amended complaint, and in that case, we know that Mrs. Davis heard Timmy apologize for attacking his father, Mr. Davis. What you're getting around to telling me is you don't allege anywhere in the third on the operative complaint that if asked, he would have said, I was the aggressor, my father shot me in self-defense or words to that effect. You don't allege what he would have said had he been directly questioned about. Well, all we allege is what Mrs. Davis said and what Mr. Davis said, and we believe that that is more than enough to trigger a reasonable investigation that would include but not be limited to asking Timmy what happened, asking Mrs. Davis what happened, possibly asking their daughter what happened, and talking with the neighbors. The neighbors who didn't see anything, correct? Again, all we've got is some, I would characterize their evidence as circumstantial evidence that would support self-defense. What if it's a suburban neighborhood house to house to house to house? A reasonable investigation canvassing the neighborhood. No, but there were neighbors that had already been. No, my question is, would that be part of a reasonable investigation? Not necessarily. That they're required to undertake. Well, if however, and like in Martelli, the officer then interviewed other witnesses. Here, at the very least, it should have been Mrs. Davis. I'm not asking you at the very least. I'm asking you what they're required to do. Are they required to canvass the neighborhood or not in a typical suburban yard yard house to house neighborhood before they make a determination of whether there's probable cause to arrest or murder? Not necessarily under the Fourth Amendment. It would have to be a reasonable investigation. Again, we'd ask that the court either decide that there was no reasonable investigation into the claim of self-defense and determine in writing why there is no stand your ground immunity. Let me clarify my question and I'll let you go. That is, under the totality of these circumstances, and we know a couple of neighbors came over, one at least, I think it was more than one, but did the officers beyond that have a duty to canvass that neighborhood and see if anybody else saw or heard anything else under the totality of the circumstances in this case? Not necessarily. Well, it's either they either did or they didn't, and you know what facts you've alleged. Under the facts you've alleged, did they or did they not have an obligation to canvass this neighborhood in these totality of the circumstances? We know what happened after the arrest, and all I can tell you is based upon what we know from the both the criminal prosecution and what we've alleged in the complaint is that the counsel and counsel, if you if you're not going to answer my question, have the candidate to look at me and tell me I'm not going to answer your question, or you can say I don't have the foggiest idea. I'll accept that, but the question I've asked is in this case, in these circumstances, did these officers have a duty under Florida law or under Fourth Amendment to canvass the neighborhood before they made a probable cause determination and decided whether to arrest or not? No. Okay, thank you. Thank you both. We have your case under submission.